IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

May 2, 2011

NICHOLS A. ROBERTS   V.  RAYMOND SOBINA, ETAL
RE:    CA No. 10-4334

## NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Hart, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge**.

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By
LINDA V. JERRY, Deputy Clerk

cc:    ROBERTS
       FALIN


       Courtroom Deputy to Judge Baylson

civ623.frm
(11/07)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS A. ROBERTS | : | CIVIL ACTION |
| Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| RAYMOND SOBINA, et al | : | |
| Respondents | : | NO. 10-4334 |

## **O R D E R**

MICHAEL M. BAYLSON, J.

AND NOW, this                day of                , 2011, upon careful and
independent consideration of the petition for writ of habeas corpus, and after review of the Report
and Recommendation of United States Magistrate Judge Jacob P. Hart, IT IS ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The petition for a writ of habeas corpus is DENIED; and

3. There is no basis for the issuance of a certificate of appealability.

BY THE COURT:

_____

MICHAEL M. BAYLSON, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NICHOLAS A. ROBERTS | : | CIVIL ACTION |
| Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| RAYMOND SOBINA, et al | : | |
| Respondents | : | NO. 10-4334 |

### REPORT AND RECOMMENDATION

JACOB P. HART                                                              April 29, 2011
UNITED STATES MAGISTRATE JUDGE

Now pending before the Court is a pro se Petition for Writ of Habeas Corpus filed, pursuant

to 28 U.S.C. § 2254, on behalf of a petitioner currently incarcerated at State Correctional Institution

at Albion, Pennsylvania. For the reasons which follow, it is recommended that the Petition for Writ

of Habeas Corpus be denied.

### I. PROCEDURAL AND FACTUAL HISTORY

On August 24, 2004, following a jury trial before the Honorable Kent H. Albright of the

Court of Common Pleas of Montgomery County, Petitioner, Nicholas A. Roberts, was convicted

of first degree murder, third degree murder, five counts of aggravated assault, conspiracy to commit

first degree murder and conspiracy to commit third degree murder.

The events leading to the charges were summarized by Judge Albright in his PCRA opinion

as follows:

> The sequence of events which ultimately resulted in the [Petitioner's] arrest
> and conviction of multiple serious criminal offenses began in the early morning hours
> of August 3, 2001, in the parking lot of the Sunnybrook Ballroom, which is located
> on the outskirts of Pottstown, Pennsylvania. Among the individuals present at the
> time were [petitioner] and his co-defendant, Joel Muir, who left the area shortly

following a verbal 'altercation' of sorts which they had become involved in with other individuals, including one Michael Ziegler. Fortunately, the dispute did not escalate beyond the threatening stage and there were no reported physical confrontations or any displays of guns or knives by those persons involved.

Thereafter, at approximately three o'clock that same morning, the [petitioner] appeared, driving a maroon Toyota Camry, in the vicinity of the intersection of Walnut and Washington Streets in Pottstown, Pennsylvania. The undisputed evidence produced at the [Petitioner's] trial demonstrated that soon after following a gold-colored Ford Taurus automobile driven by Michael Ziegler, Mr. Roberts pulled his Camry alongside the Ziegler vehicle, enabling [Petitioner's] passenger, one Joel Muir, who was then seated in the rear of [Petitioner's] vehicle, to begin shooting at the Camry (sic) and its occupants, one of the bullets unfortunately striking Mr. Ziegler in the head and killing him.

Immediately after the shooting, Mr. Roberts, with his passenger, sped away from the crime scene, but not without having been positively identified by a number of eyewitnesses present at the scene as the driver of the getaway car. [N.T. Vo. II, 8/19/04 at 22, 26-29, 94-95, 176-77; N.T. Vol. III, 8/20/04 at 62-63]. Following the murder, Detective Edward Kropp of the Pottstown Borough Police Department and Detective James McGowan of the Montgomery County Detective Bureau obtained a warrant for Mr. Robert's arrest, and on August 4, 2001, Detective Kropp filed a criminal complaint charging the [Petitioner] with murder, criminal conspiracy, aggravated assault, involuntary manslaughter and recklessly endangering another person.

After a two-year flight, the [Petitioner] was finally apprehended and Mr. Leigh Narducci, Esquire was appointed by the trial court to represent him. Following a six day jury trial, commencing on August 17, 2004 and ending on August 24, 2004 [petitioner] was found guilty of the crimes of murder in the first degree, murder in the third degree, one count of aggravated assault- causing or attempting to cause bodily injury with a deadly weapon; four counts of aggravated assault- causing or attempting to cause serious bodily injury; conspiracy to commit murder in the first degree; and conspiracy to commit murder in the third degree.

8/30/08 PCRA Opinion at pp. 1-3.

On December 29, 2004, Roberts was sentenced to a mandatory term of life imprisonment for

first degree murder and conspiracy to commit first degree murder, which were to be concurrent. He

was also sentenced to consecutive terms of two to four years for the three aggravated assault

convictions for the others besides the deceased, to run concurrent with the life sentence. For

sentencing purposes, the aggravated assault of Michael Ziegler and the third degree murder

2

conviction were merged with the first degree murder conviction and the conviction for conspiracy to commit third degree murder was merged with the conspiracy to commit first degree murder. (N.T. 12/29/04 at 48-49). Roberts filed a direct appeal and on July 12, 2006, the Pennsylvania Superior Court affirmed his conviction. On January 3, 2007, the Pennsylvania Supreme Court denied his petition for allowance of appeal.

On June 15, 2007, Roberts filed a petition pursuant to the Pennsylvania Post Conviction Relief Act (PCRA). On January 11, 2008, following an evidentiary hearing, the court issued an order denying the petition. After Roberts filed an appeal of that decision, Judge Albright issued an opinion dated September 30, 2008. The Pennsylvania Superior Court affirmed the denial of his PCRA petition on August 26, 2009, by way of opinion adopting the reasoning set forth in Judge Albright's written opinion[1]. On July 14, 2010, the Pennsylvania Supreme Court denied Roberts' request for discretionary review on July 14, 2010.

On August 21, 2010, Roberts filed the instant petition for writ of habeas corpus. He alleges that his counsel was ineffective for: (1) failing to challenge the prosecutor's comments in closing argument regarding his silence, in violation of his Fifth Amendment rights; (2) failing to object to the jury instructions on murder resulting in a denial of due process; and (3) failing to appeal inherently contradictory verdicts.

## II.   STANDARD OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996

---

[1] On appeal of the denial of Robert's PCRA petition, the Superior Court concluded "that the trial court's thorough and well-reasoned opinion adequately disposes of the issues in this case." 8/26/09 Superior Court Opinion at p. 5. The Superior Court affirmed with no further discussion, except by adding a comment on a claim which is not raised in this habeas petition. Therefore, when addressing the state court's reasoning, we will reference Judge Albright's September 30, 2008 opinion on which the Superior Court relied.

("AEDPA"),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim:
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. § 2254(d). In Williams v. Taylor, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000), the

United States Supreme Court interpreted this statute and more clearly defined the two-part standard

of review. Under the first prong of the review, a state court decision is "contrary to" the "clearly

established federal law, determined by the Supreme Court of the United States," (1) "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law,"

or (2) "if the state court confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]."

Id. at 405. Pursuant to the second prong, a state court decision can involve an "unreasonable

application" of Supreme Court precedent: (1) "if the state court identifies the correct governing

legal rule from the Court's cases but unreasonably applies it to the facts of the particular state

prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our

precedent to a new context where it should not apply or unreasonably refuses to extend that

principle to a new context where it should apply." Id. at 407-408.

4

III. DISCUSSION

All three of Roberts' claims allege a violation of his Sixth Amendment right to effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court set forth a two-prong test — both parts of which must be satisfied — by which claims alleging counsel's ineffectiveness are reviewed. Id. at 687. First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness." Id. at 688. The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Because of the difficulties in making a fair assessment, eliminating the "distorting effect" of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 163-164 (1955)). It is well established that counsel cannot be ineffective for failing to raise a meritless claim. Strickland, 466 U.S. at 691; Holland v. Horn, 150 F. Supp. 2d 706, 730 (E.D. Pa. 2001). Pursuant to the second prong, the defendant must establish that the deficient performance prejudiced the defense. It requires a demonstration that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable. Strickland, 466 U.S. at 687. More specifically, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

A.      Ineffective Assistance of Counsel for Failing to Object to Comments in Closing

## Argument

In his first claim, Roberts alleges that his trial counsel was ineffective for failing to object to comments the prosecutor made during the closing argument. He argues that his Fifth Amendment rights were violated when the prosecutor improperly urged the jury to conclude that his silence from the date of the crime until his arrest was proof that the murder was intentional. Roberts specifically points to the following portions of the closing argument, which are highlighted in bold text:

> So what happens after they take off? Two years. Two years. Been in Pottstown off and on for six months. You heard Detective McGowan put up wanted posters in Reading, Virginia, New Jersey, Florida, New York. What happens? They take off for two years.
>
> *If they were innocent, if they didn't know what was going to happen, why did they run? Why not just turn themselves in? It was a mistake. No, no mistakes. They knew what they were doing.* When you hear one, two, three, four, five, six gunshots, you know what happened.
>
> He's driving the car. He can look out the rearview mirror, he can look out those side mirrors, he can look through the rear windshield and see the people down on the ground, see that people had jumped out of the car. He didn't stop. *He didn't go to the police the next day and say Hey, I didn't know what was going on.* He chose not to do it. Two years he flees. He probably wouldn't have gotten caught either, except that Detective McGowan did his homework. Because you know what? He also changed his address. He was a little smart about it. Put down Dinney Drive instead of Binney Drive. Why did he do that?

(N.T. 8/23/04 at 163-164).

Roberts first raised this same claim in his PCRA petition. During the evidentiary hearing, the argument was limited to the statement "He didn't go to the police the next day and say Hey, I didn't know what was going on." (J. Albright 9/30/08 opinion at p. 8). When addressing the claim, the PCRA court concluded that Roberts failed to establish that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. The

court relied upon the evidence against him and found that he failed to establish prejudice, as

follows:

This inability to satisfy this last remaining element merits the rejection of Mr. Roberts' claim of ineffectiveness, since, even had the Appellant's trial counsel objected to the prosecutor's closing remarks, and had the objection been sustained and the jury cautioned, it is most unlikely that Mr. Roberts' fate would have been determined any differently. As is so readily apparent from an examination of the trial record, the evidence of the Appellant's guilt is overwhelming. [N.T. vol. I, 8/18/04 at 58-60, 65, 67-68; N.T. Vol. II, 8/19/04 at 17, 22, 26-29, 83-88, 94-95, 152-54, 157-66, 176-77; N.T. Vol. III, 8/20/04 at 29. 51-59, 62-63]. The Appellant was positively identified by a number of individuals who were present at the time and place of the drive-by shooting of Michael Ziegler as the driver of the car whose sole passenger, Joel Muir, was observed by those same witnesses shooting at Mr. Ziegler from the rear seat of the Appellant's vehicle. In fact, at the PCRA hearing Mr. Roberts' attorney conceded that his client "was there [at the scene of the crime]. He was the driver." [N.T. 9/14/07 at 18.].

The state court also noted that "neither the Pennsylvania Supreme Court nor the U.S.

Supreme Court has recognized a constitutional interest in the decision to remain silent in a pre-

arrest, pre-Miranda situation, but that the U.S. Supreme Court has determined only that comment

at trial on post-arrest, post-Miranda silence may violate due process." P. 8-9 citing Commonwealth

v. DiNicola, 866 A.2d 329, 338 n.2 (Pa. 2005). However, the court conceded, "preliminarily and

primarily for the purpose of advancing further discussion of the issue", that Roberts met the first

of the criteria needed to prove ineffectiveness, that the claim has arguable merit. Opinion at p. 8.

The state court also found that assuming there was merit, Roberts' trial counsel did not articulate

any reason for failing to object. However, assuming that the comments were objectionable, the

court concluded that the comments did not so undermine the truth-determining process, so that no

reliable adjudication of guilt or innocence could have taken place. Id.

7

We do not find the state courts decision to be contrary to or an unreasonable application of clearly established federal law. The state court's findings are entirely consistent with a proper analysis under the Strickland standard. We agree that Roberts has failed to establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. As the state court discussed, given the overwhelming evidence against him, there is no indication that this comment to the jury in closing argument undermined the truth determining process so that no reasonable adjudication could have taken place. He therefore, has failed to establish the second prong of the Strickland analysis. Accordingly, his claim must be denied.

Furthermore, even though the state court assumed for purposes of advancing further discussion that the claim had arguable merit, it is not clear that Roberts could satisfy even the first prong of the Strickland analysis. As the state court recognized, argument regarding Roberts' flight as evidence of guilt was permissible. "Appellant had no constitutional right to remain silent during his flight and his conduct, indicating guilt, could properly form the basis of the prosecutor's summation." See Commonwealth v. Easley, 483 Pa. 337, 396 A.2d 1198 (1979); Commonwealth v. Collins, 440 Pa. 368, 269 A.2d 882 (1970). "While evidence of flight alone is not sufficient to convict one of a crime, such evidence is relevant and admissible to establish an inference of guilt." Commonwealth v. Williams, 532 Pa. 265, 615 A.2d 716, 721 (1992); Commonwealth v. Rolan, 964 A.2d 398, 410 (Pa. Super. 2008). The prosecutor was permitted to argue that Roberts' flight indicated guilt. See Commonwealth v. Holland, 480 Pa. 202, 389 A.2d 1026 (1978).

In addition, as Respondent notes, Roberts' counsel addressed Roberts' flight and his pre-arrest silence in his closing argument. He argued that there was an alternate reason, other than guilt.

Roberts' attorney argued that the reason that he fled and did not come forward was because he did not want to get "sucked in" rather than it being an admission of guilt.[2] Therefore, the prosecution's statements during closing arguments were "in fair response" to these comments. See U.S. v. Robinson, 485 U.S. 25, 33-34, 108 S.Ct. 864, 869 - 870 (1988) (specifically declining to expand Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229 (1965) to preclude "a fair response" by the prosecutor).

Finally, it is clear that even the one sentence on which the state court focused as referring to silence rather than just flight is referring to his *pre-arrest* silence. As the state court recognized, neither the U.S. Supreme Court nor the Pennsylvania Supreme Court have held that pre-arrest silence may not be used against a defendant. In Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229 (1965), the Court held that where the defendant does not testify at trial, the Fifth Amendment precludes the government from using a defendant's post-arrest silence as substantive evidence of

---

[2]Roberts' trial counsel stated the following in his closing argument:

> One of the things the district attorney is going to say to you, Oh, but he ran when it was over. Two years we were looking for him. And you know what? Mr. Sanders is going to tell you that is evidence of guilt right there. Innocent people don't run away. Who else runs away besides, as he would argue, guilty people? People who are afraid, people who are scared.
>
> Imagine, a guy is driving a car and he's got his buddy in the back seat. Driving down the road, the car in front of him stops, a car he's passed a couple of times. Try to pick up some girls; that didn't work. They're headed home, or wherever they are headed. Passes a car. Bang, bang, bang, bang, bang out of the back seat. What the hell was that? Gunshots. Holy mackeral, what do I do now? Get out of here. And he does. And he runs. We're not going to hide it, we all know what he did. Two years. Finally, through a quirk of driver's licensing registration in Florida and bring him back for trial.
>
> Yeah, you could argue it's evidence of guilt. Except that His Honor will tell you that flight alone – and this is a legal principle – His Honor will charge you that flight alone is not sufficient to [convict] conduct on. So while it might be some evidence, in and of itself it's not sufficient to say guilty, especially if there's an alternate reason for flight, and I submit in this case there was a very good reason, other than guilt to run.
>
> Now, once you go and once you're away, especially if you are of the mid-set I didn't do anything, but I could get sucked into this – and there he sits, indeed sucked into it – maybe you think nothing will happen. Maybe I'll lead my life out here quiet. It didn't happen that way for Nick.

TT (8/23/04) at pp. 121-123.

9

consciousness of guilt. Following that case, in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240 (1976), the Court extended its holding and found that use at trial of a defendant's post arrest, post Miranda silence to impeach trial testimony would violate the due process clause. Doyle v. Ohio, 426 U.S. 610, 619. The Court reasoned that it would be fundamentally unfair to warn a defendant about his right to remain silent and then use that silence against him. Id. The Supreme Court has limited its holding in Doyle to the facts of that case, noting that where the failure to speak occurs prior to being taken into custody and given Miranda warnings, no governmental action induced a petitioner to remain silent and the fundamental unfairness present in Doyle does not exist. Jenkins v. Anderson, 447 U.S. 231 (1980). The Court held that impeachment by use of pre-arrest silence does not violate the Fourteenth Amendment. Id. The Supreme Court has also permitted questioning about silence post arrest, but pre-Miranda warnings. Fletcher v. United States, 455 U.S. 603, 607 (1982); U.S. v. DeFelice, 1999 WL 239095, 2 (E.D. Pa., 1999).

In light of this, although we need not even address the first prong of Strickland, since the state court's finding that he is unable to satisfy the second is supported, it is doubtful that the statements in the prosecutions' closing argument violated Roberts' constitutional rights. Therefore, the claim which his counsel failed to present appears to lack merit. As his counsel cannot be deemed ineffective for failing to raise a meritless claim, Roberts would also be unable to satisfy even the first prong of the Strickland analysis.

Roberts' claim must be denied as the state court's decision was based on a reasonable application of the clearly established federal law. Under the Strickland standard, as the state court found, Roberts cannot establish prejudice and therefore cannot satisfy the second prong of the test. As noted above, while it is not necessary to even address the first prong, the claim which he argues

10

that his counsel was ineffective for failing to present also appears to lack merit as the comments

pertained to flight, were in fair response to the defense counsel's summation and pertained only to

pre-arrest silence. Therefore, Roberts' claim must be denied.

B.    Failure to Object to Murder Jury Instructions

In his second claim, Roberts alleges that his counsel was ineffective for failing to object to

the jury instructions pertaining to murder. He sets forth the claim as follows:

> After defining First Degree Murder as an intentional killing with malice, and telling
> jurors that Third Degree Murder was 'any killing with malice that is not first or
> second degree murder', the court proceeded to define a malicious killing as one in
> which 'the killers acts with first, an intent to kill...' The trial court never told jurors
> that Third Degree Murder was a murder without the specific intent to kill. No
> objection was raised as to this instruction. Additionally, the trial court permitted the
> jury to consider charges of conspiracy to commit third degree.

The PCRA court found that "the trial court's instructions to the jury defining the crimes of first and

third degree murder and the specific elements of those two crimes as they are each, in turn, defined

within the Pennsylvania Crimes Code, were fashioned in accordance with the Pennsylvania

Suggested Standard Criminal Jury Instructions." The court indicated that in accordance with

Pennsylvania law, since in this case a determination of Robert's guilt would be premised upon his

role as an accomplice or conspirator as he was not the shooter, the jury was also charged as to the

theories of both accomplice and conspiratorial liability. The court also examined the instructions

on accomplice and conspiratorial liability in light of Roberts' claim that the instructions were

confusing and internally inconsistent and left the jury without a clear choice between first and third

degree murder.

11

The state court found that the trial court's instructions clearly distinguished between first and third degree murder. The instructions "repeatedly made reference to first degree murder as a murder committed by one who has formed a specific intent to kill and that the killing was done with malice. The state court found that Roberts was correct that the trial court did not specifically state that third degree murder does not require specific intent, but "[c]ontrary to the appellant's assertion, however, the court's instructions did, in fact, distinguish the two crimes when it informed the jury that, '[t]hird degree murder is any killing with malice that is not first or second degree murder.'" 9/30/08 PCRA Opinion at p. 15. The state court found that the trial court was not required to specifically state that third degree murder did not require the specific intent to kill, "since the distinction drawn between first and third degree murder was clearly made, particularly, insofar, as the former required a finding of a specific intent to kill with malice, while in finding the Defendant guilty of the third degree murder, the jury need be satisfied that only the following three elements be proven beyond a reasonable doubt as to each of them, '[f]irst, that Michael Ziegler is dead; second, that the defendant killed him; and third, that the defendant did so with malice." Id.

The instructions also directed the jury to consider first degree murder before considering third degree murder. The PCRA court reasoned that "[w]ith the choices made clear to them, it should be presumed that the jury followed the trial court's instructions to first consider, deliberate and enter its verdict regarding first degree murder before moving on to consider the crime of third degree murder." PCRA Opinion at 16, citing Commonwealth v. Stokes, 839 A.2d 226, 230 (Pa. 2003). Therefore, the Court found that after finding Roberts guilty of first degree murder, while it was not required to do so, the jury went on to find him guilty of third degree murder as well. The court concluded that this was "a matter of little or no consequence other than academic, since the

12

Appellant's third degree murder conviction was subsumed by and merged with his conviction of first degree murder for the purposes of sentencing." Id. Given the state court's finding that the jury instructions were proper under Pennsylvania law to indicate that the jury found specific intent and therefore properly found him guilty of first degree murder, counsel could not be ineffective for failing to object.

In assessing this claim, the state court did not apply a rule that is contrary to or unreasonably apply the clearly established federal law. See Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475 (1991) (holding that jury instructions must be read as a whole and in context; an erroneous jury instruction can rise to the level of a constitutional violation only if it "so infected the entire trial that the resulting conviction violates due process"). Rather, the state court considered the instructions as a whole and found that they accurately set forth the law. The state court's findings are consistent with the clearly established federal law. Since Roberts' trial counsel cannot be ineffective for failing to raise a meritless claim, the claim of ineffective assistance lacks merit and must be denied. See Strickland, 466 U.S. at 691; Holland v. Horn, 150 F. Supp. 2d at 730.

## C. Failure To Appeal Inconsistent Verdicts

In his third claim, Roberts asserts that he was denied due process and that his counsel was ineffective for failing to appeal inherently inconsistent verdicts. He argues that the jury's verdict, finding him guilty of first degree and third degree murder and conspiracy are inconsistent. He also states that although his counsel noted his concern by preserving the issue, he failed to challenge the contradictory verdict. He asserts that the jury convicted him of (first degree) intentional and (third degree) unintentional murder and the conspiracy to commit unintentional murder, which he claims

13

are mutually exclusive crimes.

When considering this claim, the PCRA Court first noted that on direct appeal the state courts had already found the jury's verdicts finding him guilty of first degree murder, third degree murder and conspiracy to commit first degree murder and third degree murder were not against the sufficiency or the weight of the overwhelming evidence produced at trial. The court noted that implicit in that finding was a finding that the verdicts were "neither mutually exclusive, nor inconsistent, particularly insofar as each of them was amply supported by the evidence." PCRA Opinion at p. 17 . The PCRA court indicated that when Robert's trial counsel was questioned by his PCRA counsel as to why he did not challenge the alleged inconsistency, he replied that based on the legal authority he found, he realized that he would not be successful on appeal. The PCRA court concluded that his trial counsel was "certainly, correct in his observation that the current prevailing law in Pennsylvania holds that there is nothing inherently contradictory about verdicts convicting a defendant of both first and third degree murder. Furthermore, the fact that one of the crimes requires a specific intent to kill while the other does not, will not render a defendant's convictions of those crimes impermissibly inconsistent, particularly where, as in this case, there is sufficient evidence of record to support each of those convictions independently." Id. at 18 (internal citations omitted). The state court found that the claim lacked arguable merit and his counsel could not be deemed ineffective for failing to pursue a meritless claim. Id.

As Respondent notes, under Pennsylvania law "inconsistent verdicts are valid, so long as the evidence is sufficient to support the convictions the jury has returned." Commonwealth v. Rabold, 951 A.2d 329, 336 (Pa. 2008). The state court applied Pennsylvania law and found that the verdicts were not mutually exclusive as each was supported by the evidence. PCRA Opinion

14

at pp. 17-18 (citing <u>Commonwealth v. Meadows</u>, 787 A.2d 312 (Pa. 2001); <u>Commonwealth v. Laird</u>, 726 A.2d 346 (Pa. 1999); <u>Commonwealth v. Kimbrough</u>, 872 A.2d 1244 (Pa. Super. Ct. 2005). On habeas review, the state court's finding on a state law issue, such as whether the instructions were proper under state law is binding. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. at 68.

Furthermore, it is clear that the federal law does not support Roberts' underlying claim. As a general rule, the United States Supreme Court has held that "inconsistent verdicts are constitutionally tolerable." <u>Dowling v. United States</u>, 493 U.S. 342, 353-54, 110 S.Ct. 668 (1990); <u>United States v. Powell</u>, 469 U.S. 57, 65, 105 S.Ct. 471 (1984). In <u>Powell</u>, the Court left open the question where a guilty verdict on one crime logically excludes a finding of guilt on another. <u>Powell</u>, 469 U.S. at 69, n 8. However, after that case, the Third Circuit clarified that the exception to the rule allowing inconsistent verdicts "only operates in those situations where a jury has convicted a defendant of two crimes and those *convictions* are mutually exclusive." <u>United States v. Gross</u>, 961 F.2d 1097, 1107 (3d Cir.1992) (emphasis in original); <u>See also</u> <u>Buehl v. Vaughn</u>, 166 F.3d 163, 178-79 (3d Cir.).

The Third Circuit has specifically found that with respect to homicide convictions under Pennsylvania law, "[a]n examination of the statutory definitions of first degree murder, third degree murder, and involuntary manslaughter does not reveal any apparent logical inconsistency in the verdicts." <u>Buehl v. Vaughn</u>, 166 F.3d at 179. "Although the mens rea requirement for each of these degrees of homicide differ, 'the Pennsylvania Criminal Code generally follows the Model Penal Code rule that a lesser mens rea may be satisfied by proof of a greater one.'" <u>Laird v. Horn</u>, 159 F.Supp.2d 58, 89 (E.D. Pa., 2001) (citing <u>Buehl</u>, 166 F.3d at 179; <u>See</u> 18 Pa. Cons.Stat. Ann. § 302(e) (1998); Model Penal Code § 2.02(5) (1985)).

We find the state court's findings to be entirely consistent with the clearly established federal law. As the PCRA court found, the claim that the verdicts could not stand because they were inherently inconsistent lacks support. The law is clear that the convictions were not mutually exclusive. Under Strickland, Roberts' counsel cannot be found ineffective for failing to pursue this claim. See Strickland, 466 U.S. at 691. Therefore, we must deny habeas relief.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this 29th day of April, 2011, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED. There is no probable cause to issue a certificate of appealability. The petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

16